UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MELVIN DIGGS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:18-cv-01468-SNLJ |
| CITY OF ST. LOUIS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on a motion to dismiss filed by defendants City of St Louis, Adrian Barnes, Jeff Carson, Charlene Deeken, Dale Glass, and Tonya Harry (#6). For the reasons stated, the motion will be **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

Plaintiff Melvin Diggs is a former captain at the St. Louis Medium Security Institution (MSI). During his career, plaintiff served on a number of special task assignments including efforts to reduce jail violence and improve safety. Plaintiff explains that, throughout his career, he "regularly informed staff, supervisors, and others about the poor conditions of the jail and the danger it posed to the safety of inmates and corrections officers alike." For example, he would complain about broken windows, lack of air conditioning, mold, rodent infestations, and the inadequate number of corrections officers serving on his shift. Plaintiff brought these complaints to his "supervisors," which apparently include the various defendants named in their individual capacities.

1

In April 2017, plaintiff alleges he was warned by a co-worker that his supervisors were "targeting him." Around that same time, plaintiff was involved in a "use-of-force incident" that required him to provide necessary paperwork to substantiate his use of force. Plaintiff explains that he provided this paperwork, but that he was nonetheless suspended for fifteen days for purportedly "failing to properly submit a document related to the use-of-force incident." A grievance process followed in May 2017, whereby plaintiff indicated he believed he was being targeted due to his complaints about the poor conditions at MSI. In June 2017, plaintiff was "again cited … for a policy violation stemming from the [] use-o-force incident."

Under stress and having allegedly been diagnosed with depression, plaintiff "took some leave under the Family and Medical Leave Act" but was "wrongfully docked pay" as a result. On July 24, 2017, plaintiff returned from FMLA leave. He was terminated two days later. Defendant Glass, Commissioner of the Division of Corrections of the City of St. Louis, purportedly told others that plaintiff "threatened to shoot up the place" during a phone call between them, which plaintiff believes is the reason he was ultimately terminated under his employer's zero-tolerance workplace violence policy.

Plaintiff has filed an eight-count complaint against defendants. Counts I and II allege a retaliation-based adverse employment action under 42 U.S.C. § 1983 based on the First Amendment. Count III alleges a retaliation-based claim under the FMLA. Count IV alleges a failure-to-accommodate claim under the Americans with Disabilities Act. Counts V through VIII allege civil conspiracy based on the conduct underlying Counts I, II, III, and IV. Defendants have moved to dismiss all eight counts for differing reasons.

## II. ANALYSIS

### 1. Counts I and II—Pleading Sufficiency of Plaintiff's Retaliation-Based Section 1983 claims

To establish a *prima facie* case of retaliation under Section 1983, it must be proven that: (1) plaintiff engaged in protected activity; (2) the employer took an adverse employment action against plaintiff resulting in a material change to the terms or conditions of employment; and (3) employer's retaliatory motive played a part in the adverse employment action. *Hughes v. Stottlemyre*, 454 F.3d 791, 796 (8th Cir. 2006). Eighth Circuit precedent requires "a causal connection between the protected activity and the adverse employment action." *Jones v. Fitzgerald*, 285 F.3d 705, 713 (8th Cir. 2002). This causality aspect is supported through satisfaction of the third element, which uses a retaliatory motive to identify a causal link between plaintiff's protected activity and defendant's adverse employment action. Necessarily, then, a defendant must have some basic knowledge of the protected activity in order that he or she can develop a retaliatory motive to take action against it. *See Lyons v. Vaught*, 781 F.3d 958, 963 (8th Cir. 2015). That said, a retaliatory motive need not be open and obvious—it is a rare case that an employer openly says they are acting against their employee due to protected activity. Rather, "[e]vidence that gives rise to an inference of a retaliatory motive on the part of the employer"—such as a short lapse in time between protected act and adverse employment action with little other justifying reason—"is sufficient to prove a causal connection." *Hughes*, 454 F.3d at 797; *see also Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1022 (8th Cir. 2011) (discussing temporal proximity as a sign of retaliatory motive).

3

In seeking dismissal under Rule 12(b)(6), defendants argue plaintiff's complaint is simply too sparse in its allegations regarding the unique knowledge and reactive conduct of each defendant. They argue the complaint does not explain what each defendant knew, if anything, about plaintiff's protected conduct and, furthermore, does not explain what, if any, actions were taken because of this knowledge. In essence, they believe there are insufficient facts to support the third element of plaintiff's claim, stating "plaintiff fails to allege a causal connection between [plaintiff] filing grievances about the conditions at MSI and his termination[.]"[1] This Court disagrees.

In *Hughes v. Stottlemyre*, the Eighth Circuit explained that "causation can be established by direct personal participation in the deprivation or by participation setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injuries on third parties." 454 F.3d 791, 798 (2006) (*quoting Darnell v. Ford*, 903 F.2d 556, 562 (8th Cir. 1990)). *Hughes* involved a situation in which the plaintiff had offended his supervisors by criticizing a workplace policy they supported. In retaliation, the supervisors initiated four disciplinary complaints against plaintiff. *Id*. at 794-795. This ultimately resulted in the plaintiff being demoted and transferred to another division. *Id*. It was emphasized that "there is no evidence [plaintiff] would have been demoted and transferred but for the four complaints [his supervisors initiated against him]." *Id*. at 799. Therefore, the Eighth Circuit held that plaintiff had stated a *prima facie* case against his supervisors by alleging a "but for

---

[1] None of these arguments are addressed to the defendant City's particular involvement, but only to the conduct of the individual defendant officers.

causation[al]" link between their conduct (initiating complaints) and the eventual adverse employment action taken against plaintiff (demotion and termination). *Id*.

In so holding, the Eighth Circuit specifically relied on the fact that evidence pointed to the supervisors initiating the complaints because of their awareness and strong dislike for plaintiff's protected activities—there, his protected speech under the First Amendment to speak out against a workplace policy that affected public safety. *Id*. at 796, 798-799. The Eighth Circuit also agreed that plaintiff had stated a *prima facie* case against another defendant who actually investigated the supervisors' complaints, though apparently in an obstructive manner designed to harm plaintiff. There was evidence suggesting this person was "enlisted" by the supervisors to further their "plan" against plaintiff. *Id*. at 795, 799. However, the Eighth Circuit dismissed the defendant who was actually responsible for making the decision to demote and transfer the plaintiff. As to this particular defendant, it was concluded that he had no knowledge of plaintiff's protected activities but, instead, relied purely on the unrelated disciplinary issues investigated in the four complaints—in essence, despite taking the ultimate action against plaintiff, he was an unknowing pawn in the supervisors' plan and had no retaliatory motive himself. *Id*. at 798.

*Hughes* demonstrates the important interaction between a defendant's individual knowledge of a plaintiff's protected activity and his or her own unique response to that knowledge—conduct that either directly resulted in an adverse employment action or that causally led to an adverse employment action. Without knowledge of a protected activity,

5

there can be no retaliatory motive; and without an adverse response based on that knowledge, there can be no but-for causation—both are necessary components.

With this rubric in mind, the Court finds the complaint fairly comports with the specificity of allegations deemed sufficient in *Hughes*. As such, the Court holds plaintiff has sufficiently stated a prima facie case against each defendant except for Deeken. Deeken is mentioned only three times in the complaint and none of those references say anything more than that she "did not address" concerns raised by plaintiff, by letter, that he was being "targeted" for his protected activities—this vague reference does not satisfy that Deeken took any specific action against plaintiff in retaliation for his protected activities or that she was a "but for" cause of his termination.

As for the other defendants, the complaint indicates Glass, Carson, Barnes, and Harry "entered into a civil conspiracy to provide false testimony" against plaintiff during his administrative hearing that resulted in his termination. Like Hughes, this suggests all four knew of plaintiff's protected activity and planned action against him in response. Among other things, Glass is alleged to have provided false testimony against plaintiff regarding the alleged threats that plaintiff threatened to "shoot up the place." Carson apparently ordered plaintiff's pay to be docked, suspended him for fifteen days, and "intimidated witness prior to the [administrative] hearing in a civil conspiracy to violate plaintiff's rights to take [FMLA] leave." Barnes is alleged to have terminated plaintiff—relying "only" on the allegedly false statements by Glass—after being recruited by Glass as a hearing officer as part of the "civil conspiracy" to violate plaintiff's constitutional rights. And Harry allegedly entered into the "civil conspiracy" with Glass and the others

by indicating he was "a witness to [plaintiff's threat," and providing "false testimony" to that effect, despite having never provided a written statement to that effect "prior to the hearing in accordance with City policy." All were allegedly working together to "target" plaintiff with the common knowledge that he was an irritant for their employer due to his complaints (i.e. protected activity) about the poor conditions of the jail he worked at.

In sum, while the complaint may or may not be a model of clarity—indeed it does appear to make certain allegations without attributing them to specific defendants—it nonetheless, in total, adequately addresses the unique involvement of each defendant sufficient to satisfy the requirement of Rule 8 to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Qwest Communications Co., LLC. v. Free Conferencing*, 990 F.Supp.2d 953, 969-970 (D. Minn. 2014) (holding that blanket pleading against a group of defendants, while potentially insufficient to state a claim, is sufficient where it is clear each defendant performed the same or similar acts).

2. **Count III—The Adequacy of Plaintiff's Pleadings Regarding Notice to His Employer to Take FMLA Leave**

Defendants seek to dismiss Count III, which asserts a claim under the FMLA against City of St. Louis, Carson, and Harry, because the "[c]omplaint contains no allegations that plaintiff provided defendants notice of his intent to take FMLA leave[.]" Defendants note "[p]laintiff's complaint alleges only that plaintiff took leave under FMLA after 'consulting with his employer.'"

A retaliation-based FMLA claim arises under § 2615(a)(2) "if an employer takes adverse action against an employee who opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave." *Brown v. Diversified Distribution Sys., LLC.*, 801 F.3d 901, 909 (8th Cir. 2015) (internal quotations omitted). A plaintiff "must show that [they] exercised rights afforded by the Act, that [they] suffered an adverse employment action, and that there was a causal connection between [their] exercise of rights and the adverse employment action." *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1016 (8th Cir. 2013). Therefore, providing the employer notice of intent to take FMLA leave is important both because providing such notice constitutes a protected activity under the FMLA in itself and because it ensures a sufficient baseline of knowledge for which the employer can develop a retaliatory motive. *Id.*; *see also Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006).

Defendants rely on the Eighth Circuit's opinion in *Hager* for the proposition that plaintiff has not fully "allege[d] notice of intent to take FMLA leave [and that] he was qualified for that leave." What *Hager* actually says, however, is that a plaintiff "need not specifically invoke the FMLA," but must, at minimum, provide timely notice of an intent to take leave—30 days' notice when foreseeable, or as soon as practicable if unforeseeable—that suggests to an employer the presence of a "serious health condition." *Hager*, 735 F.3d at 1015-1016. Defendants do not indicate there was an issue with the timeliness of plaintiff's notification. And, construing the facts in favor of plaintiff, it is not a stretch to understand plaintiff's allegation that "on medical advice [he] consult[ed]

8

with his employer [about taking] some time off of work under the [FMLA]" to mean he told his employer he suffered a serious health condition that necessitated leave—in this case depression, which can be the basis of an FMLA claim. *See Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 852 (8th Cir. 2002).

Indeed, the Eighth Circuit has recently cautioned that "under the 'simplified notice pleading standard' that governs *McDonnell Douglas* retaliation claims, summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims." *Wilson v. Arkansas Dept. of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (*quoting Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002)); *see also Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) (applying the *McDonnell Douglas* burden-shifting framework to an FMLA retaliation claim). In *Wilson*, the Eighth Circuit held that an allegation by plaintiff that she was a "victim of [] retaliation, after having complained about discrimination based on race, when she was [] ultimately terminated" was sufficient to state a claim. *Wilson*, 850 F.3d at 373. Given such leniency in the applicable pleading standard and in light of the necessary deference owed to plaintiff as the non-movant, the Court has little trouble concluding plaintiff's claim that he "consulted with his employer" about his need to take leave due to his depression is likewise sufficient to state an FMLA claim. At this stage, the Court must afford plaintiff the inference that "consulting with his employer" before "properly [taking] some time off of work" means that he discussed his depression with his employer and whether or not he was qualified to take leave based on this condition. Whether or not it can survive summary judgment is a different matter, but Count III will not be dismissed at this early stage.

3. **Count IV—The Requirement, or Lack Thereof, to Plead Exhaustion of Administrative Remedies under Section 2000e-5 for an ADA Claim**

Count IV alleges a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, against City of St. Louis, Carson, Glass, and Harry. Defendants assert that Count IV must be dismissed because "plaintiff fails entirely to allege he pursued any administrative remedies related to his disability, let alone exhausted said administrative remedies." Plaintiff counters this argument by explaining he has no obligation "to plead in anticipation of an affirmative defense," such as failure to exhaust administrative remedies. Defendants filed no reply to that argument, and this Court agrees, in any event, with plaintiff. Even if administrative exhaustion is necessary to support an ADA claim in federal court, "failure to exhaust administrative remedies is an affirmative defense *that a defendant must prove.*" *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 534 (8th Cir. 2018) (emphasis added). Having failed to do so, defendants' arguments are left wanting and must fail.

4. **Counts V through VIII—The Survivability of Plaintiff's Civil Conspiracy Counts in Light of This Court's Rulings on Counts I through IV**

Defendants move to dismiss Counts V through VIII, all alleging civil conspiracy, based on an assumption that this Court would agree that the underlying Counts I through IV would fail. In support, defendants point out, and plaintiff does not dispute, that civil conspiracy is not an individual claim and cannot survive without an underlying violation. But, having concluded that Counts I through IV survive defendants' motion to dismiss, the civil conspiracy counts do have a basis in underlying wrongful conduct. Accordingly,

defendants' narrow ground for seeking dismissal of the civil conspiracy counts is lost and their arguments must fail.

## III. CONCLUSION

For all the reasons stated above,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (#6) is **GRANTED IN PART and DENIED IN PART.**

The motion is **GRANTED** as to Counts I and II, claims under 42 U.S.C. § 1983, against defendant Charlene Deeken.

The motion is **DENIED** in all other respects.

So ordered this 6th day of March 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE